(74 App. Div. 271.)

MANHATTAN FIRE INS. CO. OF CITY OF NEW YORK et al. v. FOX et al.

(Supreme Court, Appellate Division, First Department.  July 8, 1902.)

1. INSURANCE COMPANIES—REORGANIZATION—ACTIONS—PARTIES.

A mutual insurance company, of which defendants were directors, had issued advance premium receipts, bearing interest, as authorized by Laws 1870, c. 196, § 2.  After the company decided to reorganize as a stock company, under Laws 1892, c. 690, § 125, by agreement with the holders of such receipts the directors passed a resolution to redeem them, and for that purpose borrowed the necessary money, giving securities held by the company as collateral.  The holders of the receipts, on being paid, subscribed for the stock of the new company, repaying the amount so received for such stock; and the new company was then organized, assuming all assets and liabilities of the old.  The mutual company had an excess of assets, as did also the reorganized company, for some time thereafter.  Afterwards the stock company and its receiver brought this action against defendants for an illegal diversion of the funds of the corporation.  *Held*, that the money paid in redemption of such receipts was not the property of the stock company, but of the mutual company, and it alone, if any one, had a right of action therefor.

2. SAME—CEASING TO DO BUSINESS—REPAYMENT OF CAPITAL CONTRIBUTED.

The receipts represented the capital of the mutual company, and, when it ceased to do business, those contributing the capital were entitled to have it repaid.

3. SAME—CONSOLIDATION—REORGANIZATION—APPLICATION OF STATUTES.

Laws 1892, c. 690, § 129, authorizing and regulating the consolidation of two fire insurance companies, has no application to a change from a mutual to a joint-stock company.

4. SAME—DIRECTORS—PAYMENTS IN UNAUTHORIZED MANNER—LIABILITY.

Where, in an action against the directors of a corporation for a diversion of its funds, the only complaint is that they paid a valid obligation in an unauthorized manner, no recovery can be had unless damage is shown.

Appeal from special term, New York county.

Action by the Manhattan Fire Insurance Company of the City of New York and another against Joseph Fox and others.  From a judgment for defendants, plaintiffs appeals.  Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

George Edwin Joseph, for appellants.

Otto Horwitz, for respondents.

INGRAHAM, J.  There is no dispute as to the facts in this case, the substantial facts being admitted by the pleadings.  On the 15th day of February, 1869, there was incorporated under the laws of this state a joint-stock fire insurance company, called the Insurers' Own Fire Insurance Company.  The charter of this corporation was by an act of the legislature passed on the 13th day of April, 1870, amended, and the name thereof changed to the Mutual Fire Insurance Company.  Section 2 of that act (chapter 196, Laws 1870) provides that:

"The said company is authorized to receive from any number of persons subscriptions payable in cash and give therefor receipts bearing interest, which receipts shall severally set forth that they are given for money received in advance for premiums of insurance and that the amounts of the same and every part thereof are liable for the expenses and losses of

the said company, and the said receipts shall be received by the said company, only in payment for premiums of insurance, or on account thereof."

It appeared that in the years 1881 and 1882 the sum of $200,000 in cash was paid to the corporation, who issued to the persons paying the same receipts as provided for by this act. These receipts bore interest at the rate of 6 per cent. per annum, and the holders were entitled to participate in the profits of the company at the rate of 4 per cent. per annum; and the company agreed to accept the receipts at par, when presented in payment for premiums of insurance, or on account thereof. For these receipts there were subsequently substituted new receipts, which provided that the company had received the amount of money subscribed as cash in advance for premiums of insurance, which amount, and every part thereof, was liable for the expenses and losses of the company, and until the redemption thereof should bear interest at the rate of ten per centum per annum, payable semiannually, on January 1st and July 1st of each year. The company was obligated to accept the receipt at par when presented in payment for premiums of insurance, or on account thereof, and they could not be called in for redemption by the company in any way whatever, except with the consent of the holder. This company continued to do business as such Mutual Fire Insurance Company until the year 1897. In January of that year the defendants, with others, were duly elected directors of the company for the year 1897. On or about August 30, 1897, proceedings were taken by the corporation to change the corporation into a joint-stock fire insurance company, under section 125 of the insurance law (chapter 690, Laws 1892). On the 5th day of November, 1897, the said corporation duly filed its amended charter under said law, and thereby became and was a joint-stock fire insurance company, under the name of the Manhattan Fire Insurance Company of the City of New York. Section 125 of the insurance law provides that:

"Any domestic fire insurance corporation having surplus assets aside from premium and capital stock notes sufficient to reinsure all its outstanding risks * * * may, with the consent of two-thirds of the members present at any regular annual meeting, or at any special meeting duly called for the purpose, or with the consent in writing of two-thirds of the members of such corporation, and the consent of three-fourths of its directors * * * become a joint stock corporation, by conforming its charter to and otherwise proceeding in accordance with this chapter. * * * Every corporation so extended or changed shall come under the provision of this chapter in the same manner as if it has been incorporated originally thereunder."

It is not disputed but that the provisions of this section were complied with, and the Mutual Fire Insurance Company, upon its charter being approved, thereby became a joint-stock corporation. There is no dispute but that this Mutual Fire Insurance Company was then solvent, having surplus assets, aside from premium and capital stock notes, sufficient to reinsure all its outstanding risks. There had been issued receipts in the form before mentioned amounting to more than $211,000, for which the company had received cash, and which the corporation was bound to receive in payment of premiums, and was bound to pay interest thereon at the rate of 10 per centum per annum,

and which could not be called in for redemption by the company, except with the consent of the holders of the receipts. Upon the change of this company from a mutual company to a joint-stock company, the condition upon which the subscription had been made to the mutual company which was represented by these receipts became inapplicable to the new company. In place of the capital that was represented by this subscription, for which these receipts had been given, the new company was to issue its capital stock to the amount of $250,000, which was to be subscribed for and paid in in cash, and these outstanding receipts then represented obligations of the mutual company, the company holding securities which represented that amount; but upon these certificates the company were bound to pay 10 per cent. interest to the holders of the receipts. The holders of $211,006.30 of these outstanding receipts consented to the redemption thereof at par and accrued interest, and the directors of the mutual company passed a resolution directing the officers of the company to redeem these receipts at par and accrued interest to October 20, 1897; and for that purpose the president was authorized and directed to borrow the sum of $200,000, and to give as collateral for such loan certain securities, the property of the company, specified in the resolution; and this arrangement was carried out. The board of directors borrowed the sum of $200,000, redeemed the receipts, and paid out therefor the sum of $217,248.63. The persons owning these receipts and receiving this money from the company thereupon subscribed to the capital stock of the company, and thus became stockholders in the joint-stock company, repaying to such company the amount received by them in the redemption of the receipts; the substantial effect of this transaction being that the holders of these obligations of the old mutual company surrendered the receipts, and received in lieu thereof stock of the new joint-stock company, so that on November 5, 1897, the joint-stock company became a duly incorporated company, and all of the assets and business of the mutual company were transferred to or merged in the new corporation, who continued the business; so far as appears, discharging all obligations of the mutual company. It is not alleged that there are any outstanding obligations of the mutual company in existence, or that the mutual company, when it passed out of existence and became merged in the joint-stock company, and the joint-stock company after it was incorporated, was not entirely solvent, or that the policy holders or members of the mutual company made any objection to this transaction or suffered any loss thereby. The new joint-stock company continued to do business until the 8th of June, 1901, when it was dissolved, and a receiver appointed to wind up its affairs. It also appeared that at a meeting of the board of directors of the new stock company on the 22d day of December, 1898, a resolution was adopted reciting that these receipts were wrongfully redeemed, and that the funds of the company were thereby wrongfully diverted and misappropriated to the amount of $211,006.30, and it was resolved that the board of directors repudiate and declare null and void the action so taken by the then board of directors of the Mutual Fire In-

surance Company; and the officers and counsel of the company were authorized to institute proceedings against such of the directors, as, in their opinion, should be made responsible for such diversion and misappropriation of the funds of the company, and it was in pursuance of this resolution that this action was brought.

It is difficult to see upon what principle the joint-stock corporation thus organized could object to this transaction. Assuming that the policy holders of the Mutual Fire Insurance Company could have thus objected, there is no evidence that they have ever taken such a step, or that there are any policy holders in existence whose claims have not been fully met and discharged. Those who had contributed to the capital of the mutual company had consented to receive back from the company the money that they had contributed. There is no express provision in the statute authorizing the change of a mutual company to a joint-stock company as to what disposition should be made of the assets of the mutual company, or what right should inure to the holders of the certificates or receipts for the money that had been paid into the mutual company, and which had constituted the capital upon which it did business. Upon the merger of the mutual company into the stock company, its assets would undoubtedly vest in the stock company, which would then be liable to fulfill all the engagements of the mutual company, including the liability to the holder of the receipts. There is, however, no provision which prevented the mutual company, or the stock company succeeding to its property and obligations, from terminating the liability to pay interest on these receipts at the rate of 10 per centum per annum, by redeeming the receipts out of the property of the mutual company; thus repaying to those who had contributed to form the capital of the mutual company the money that they had contributed for that purpose, when the object for which the contribution had been made had terminated by the practical dissolution of the mutual company. So long as the mutual company continued, the fund represented by these receipts constituted its capital. When it ceased to do business, those contributing the capital were entitled to have it repaid.

The provision of section 129 of the insurance law, which seems to be relied upon by the plaintiff, has no application to a change from a mutual company to a joint-stock company. That section provides for the consolidation of two fire insurance companies, and applies to such a consolidation only. Upon the conceded facts, therefore, we think it clear that this transaction was not an illegal diversion of the funds of the mutual company, but a payment by the company of its obligations, which, in view of its merger into the new stock corporation then formed, was a valid and proper appropriation of the property of the company. But considering the nature of this action, it would also be clear that this act of the directors of the mutual company gave no cause of action to the stock company or to its receiver. The action is one against the directors of the mutual company for an illegal diversion of the funds of the corporation. This money that was paid in the redemption of these certificates of the mutual company never became the property of the stock corporation. Before this stock corporation was formed, the mutual company had appropriated

a certain proportion of these assets to the redemption of these receipts; and whatever right of action that existed, if there was any right of action, was a right that vested in the mutual company for the benefit of its policy holders, or those who were members of that company. There is no action here for a conversion of any property of either corporation, as at times seems to be assumed by counsel for the appellant. He speaks of the action as one for a conversion; but the action is clearly one for damages against the directors of this corporation, not for a conversion, for there is no evidence that the directors converted any property of the corporation. What they did was to pay an obligation of the mutual company with assets of the mutual company, in a manner in which the plaintiff claims such obligation was not payable; but the action could only be maintained as an action for damages caused to the corporation by an illegal or improper diversion of its property, and, to recover in such an action, it would seem to follow that the plaintiff must prove damage. There is no evidence to show that this company would now be in a better position if these outstanding receipts had not been redeemed. The company was compelled to pay 10 per cent. interest upon the amount that they represented, and there is nothing to justify any claim that this plaintiff sustained any damage in consequence of the redemption. There is therefore nothing in the law or the charter of the mutual company that prevented that company from redeeming these receipts when that company ceased to do business, providing that such payment did not impair the rights of the creditors or the mutual company; and when it relinquished the business as a mutual company, and became a joint-stock company, with a full paid up capital of $250,000, and satisfied all of its policy holders and other creditors, there was no one who could complain of this act of the directors.

It follows that the court correctly dismissed the complaint, and that the judgment should be affirmed, with costs. All concur.